Our final case of the day is United States v. Eural Black, Appeal No. 24-1191. Mr. Tice, whenever you're ready. Good morning. May it please the Court. Congress has charged the Sentencing Commission with describing what are extraordinary and compelling reasons for a sentence reduction. That's in 28 U.S.C. 9914. The Sentencing Commission has discharged that duty with the policy statement that brings us here today. And once the Commission has issued that policy statement, the only way to set it aside is if it is manifestly contrary to a statute. The government has not really presented any compelling case for that preposition that it's manifestly contrary. It seems to think that this Court already decided all these issues with Thacker. You agree we have to overrule Thacker to decide in your favor, right? No, I do not, Your Honor. How do we get around Thacker's language? Thacker very clearly in two places mentions that 924C by itself or in combination with other factors cannot be a reason for extraordinary and compelling release. We have to keep in mind that what Thacker did is different from what this Court is called upon to do today. When Thacker was decided, there was no policy statement. This Court was deciding what would we think of as an extraordinary and compelling reason. Well, that's not really what we were doing. We were interpreting the law. You were interpreting a statute, yes. And you had in mind at that time, and Gunn is a good example of this, that there was no policy statement, and the Court in Gunn said, you know, we realize there's discretion, but we don't think that anybody should go too far away from the Commission's policy statements, even though they only applied when it was a government-instituted motion. That is very different from what we have here now. The Sentencing Commission has issued a policy statement. Yeah, but that policy statement has to be consistent with federal law. I mean, 28 U.S.C. 994A says that any Commission's interpretation has to be consistent with all pertinent provisions of federal statute. Yes, and I go back, and I can see I'm not... Like, what do we do here with Congress could not have been any clearer that 924C applies prospectively, not, you know, the unstacking or stacking, prospectively, not retroactively, and the Commission, it seems to me, says Congress got it wrong. It actually applies retroactively as well. What are we supposed to do with that? Well, I think it's important to keep in mind what you did in Thacker and what you called upon to do today, and now with this latest question, you've mixed in another theme. You're suggesting that Thacker said that any compassionate release would be inconsistent with the Fair Sentencing Act. That is a separate, albeit related, issue. In terms of, is the policy statement consistent with 3582? Of course it is. Congress recognized that 3582 was so open-ended that it called upon the Commission to describe what would come within the context of 3582, and that wasn't done when you had decided Thacker. Now it's been done, and the only way... Was it correct that in Thacker we had one defendant arguing, I'm eligible? Correct. And what we have before us now is a considerably narrower policy statement, right, with these other fences built in. Right. The 10 years, the gross disparity, the... what am I leaving out there? Unusually long sentence. Unusually long sentence, yes, and then gross disparity. Yeah. Okay. So a considerably narrower request. Right. So we've got a different task... Okay, so what do we do with Thacker's statement that says, at step one, the prisoner must identify an extraordinary and compelling reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, which were just listed, consideration of the First Step Act's amendment to 924C. Do we just read out of Thacker, whether alone or in combination with other factors, and pretend like we didn't say that? No, you... Which, by the way, was in response to our first decision in this very case. Yes, here we are back again three and a half years later. But Thacker was talking about... Thacker was talking about United States versus black, the first iteration. Okay. Please let me proceed. Go ahead. I'm sorry. Thacker was talking about a defendant who comes to the court with no policy statement, and in fact is asking the court to do something that's very different from the policy statement that was in effect at the time of Thacker, albeit only for government-issued... But we anticipated that because we knew that was coming, and we said we harbor broader concerns with allowing 3582C1A to serve as the authority for relief from mandatory minimum sentences prescribed by Congress. I mean, by the way, the policy statement didn't strike, didn't hit us out of the blue. We knew this was coming. We knew what Congress had delegated to the sentencing commission. Well, at the time of Thacker, you didn't know that the... We didn't know the result. Well, it hadn't even... The commission hadn't even taken up that issue at the time of Thacker. But we knew they would, right? Because Congress told them to. Well, in the sense that you know Congress told the commission that this is something that they should have started doing back in 1987 and continued up until today and later on. And remember, what we're talking about is the commission making policy statements. Right now, we have a policy statement that's very favorable to my client. Two years from now, we might have a policy statement that's not so favorable to a client who's similarly situated. So we've got a different situation now once the commission has looked at these matters and come to the conclusion that this is a reason for granting a sentence reduction. Mr. Thise, can you point us to some other situations? This is obviously very unusual where we have statute, no controlling administrative interpretation for a while with courts doing what they can to interpret it and then a later, in essence, administrative policy statement. Can you point us to other situations where, in essence, conflicting court decisions under a statute have been resolved by later rulemaking? I certainly can't in the sentencing context, although I think you're probably asking about broader context. Well, I'll take sentencing too, but you follow it more closely than I do.  Well, sentencing, I don't think that there's one like this where there was a vacuum. The commission then steps in as it was required to do and fills the vacuum. But there is more general case law that says that when an agency fills out a statute, the fact that there's court decisions before that, they don't preemptively strike down what the agency does. What do you have in mind as you say that? I can't remember the sign off hand. I believe it's in the briefs, but I'm not going to ask you to hunt it. I'll go back and I'll submit a letter. Believe me, it wouldn't be more than like two sentences long. Because the idea is that when Congress commits a decision to the agency, there's no race between the courts and the agency. If the court happens to decide, we think this is what the statute means, when the agency comes along later and says, we think it means something else, the agency ruling controls. And that's especially true now in this situation where you've got such an open-ended statute and Congress is very specific, saying to the commission, we want you to interpret what extraordinary and compelling it is, not we'd like you to interpret anything that seems like fair game. I've got a minute left, so I'd like to save a free bottle. Thank you. Certainly. You're welcome, Mr. Case. Okay, Ms. Bonamici. May it please the court, counsel, Debra Bonamici on behalf of the United States, it looks like I'm just in time to say good morning. I like that, actually. I'm happy about that. Well done. Your Honor, it's the Sentencing Commission's authority to describe qualifying reasons for sentencing reduction under Section 3582C1A1 is limited by Congress's directive that any such reasons be both extraordinary and compelling. As this Court determined in Thacker, non-retroactive changes in sentencing law are categorically ordinary, not extraordinary, and therefore they can't constitute qualifying reasons for reduction under the statute. How do old age and illness qualify as extraordinary and compelling? Old age and illness just generally don't. The policy statement, as currently written and as it was written in the past, restricted the type of old age, the level of infirmity, et cetera, to pretty narrow grounds. In fact, you know, mostly, most of the cases involved terminal illness, but they, at the end of the day, all had to establish that the particular illness that the defendant suffered from was one that made it difficult for him to, difficult or impossible for him to maintain. You're talking about the earlier versions of the policy statement? Even the . . . How about now? Seventy years old, served at least thirty years, not a danger. So you mean C1A2? Yeah. How is that unusual? Well, I'm just, I'm trying to understand the appropriate lens for deciding when situations are extraordinary and compelling, and I don't see anything particularly unusual about aging inmates who served long sentences and are suffering from poor health, and they are eligible generally for this relief, right? Well, in reality, it is unusual for inmates to be, I mean, first of all, the population of inmates that have reached an advanced age like that is quite small, and of course, if we all live long enough, we'll all get sick, right? Yeah. I understand that, but that isn't, that's, this still cabins the . . . That seems a lot more ordinary to me than the kind of rewriting of sentencing laws to make them dramatically more lenient, which is, from one perspective, quite extraordinary itself in recent American policymaking and lawmaking. I'm not sure I understood that last comment, but what I would say is that the restrictions that have applied from the beginning as to age, it's true that we all get old. It's true that if we live long enough, we'll all get sick, but that doesn't mean that we will all be in prison when we do that and that we will all become sick enough, right? Focus on the population of aging prisoners. Why not focus on the population of prisoners? I mean, that's my point, is that it's a smaller group, and it is extraordinary to be over 70 years old and have served the amount of time. In any event, that provision that you're talking about does not require a showing of extraordinary and compelling circumstances. Is it under a different statute? Sorry. No, it's a different subpart. Oh, okay. Is there any law of Congress that we can take and extrapolate from that says aging is not an extraordinary and compelling reason for release? Just pure aging? Yeah. No, I... I'm not aware of one. I'm not either, Judge. The First Step Act says clearly that 924C does not apply prospectively. In other words, the changes to 924C do not apply retroactively to prisoners that have already been in prison. Is there any parallel law that you can find that says aging is not an extraordinary and compelling reason for relief? No, but that's not... I can't think of one, Your Honor. I don't find it surprising, though, because this is the...  So if 924C applied retroactively, the government's position here would probably be different, right? The government's position would be that the defendant would be, you know, potentially would be entitled to relief on the basis of the retroactive... Right. ...active application, not on the basis of the compassionate release statute. That's... See, that's... How so? ...that would make a difference, because he would potentially have an opportunity to take advantage of the retroactive application, potentially. I mean... As a different matter, and therefore, because there was a retroactive application of the law, he would have to proceed that way, similar to Habeas' case. He'd have to proceed under Habeas, not under extraordinary and compelling. Similar to Section 404 of the First Step Act. Worked exactly that way. We have... I'm sure you've seen the motions for relief under Section 404, and if the defendant is eligible for relief under the statute, that is, he has a covered... He was convicted of a covered offense, and then it... Similar to the way that compassionate release works, the judge then may exercise its discretion, the court may exercise its discretion to grant him relief from his sentence, or a reduction in his sentence on that basis. So there would be a separate provision for that. Here, what you have is a circumstance, or a policy statement that purports to allow for the... For compassion... For eligibility for compassionate release, in the context of something that is not, number one, as this court found in Thacker, not actually extraordinary at all. It's not only common and expected, but it's ordinary in the sense that it's the default for a statute that doesn't specify whether it will apply retroactively or prospectively. And in this particular case, we're talking about a guideline that's permitting, as I think you're getting at, is effectively giving an opportunity for a defendant to basically side-drive around that restriction. And that restriction, now, in terms of... Judge Hamilton, you brought up the additional guardrails, the additional requirements of B6, of subsection B6, and I do want to make sure that I mentioned that those guardrails are really not independent factors when you look at them a little bit more closely. They are really, in every way, derivative of the change in law, or actually the nature of the defendant's sentence to begin with. So he's got an unusually long sentence, because if you have a stack 924C, you have an additional mandatory minimum of 25 years, which, at least arguably, and I would think a lot of courts would find that to be unusual, even though it shouldn't be, because it's, after all, a sentence imposed at the direction of Congress, but in any event. And you have gross disparity, as there, again, would be in virtually every single case in the context of 924C, because it would be an additional 25 years, or at least that would be the argument. I think it would be reasonable to think that your courts would accept that argument. And the only thing you have left is the service of 10 years, which, again, every person with a stack 924C is going to eventually get to the point where they've served 10 years. So that's more of a trend. So should we go back and look at the whole population of inmates to see what's extraordinary there? I don't think it's, I don't think this is a total, it's a question, first of all, I don't think that the reading of the statute is a numbers game. It is something to consider in terms of... The comment that I guess was a little cryptic earlier was, I don't remember in my professional career any amendments to sentencing law that produced a more dramatic change than the amendment to stacking 924C charges. You follow this, I assume, more closely than I do. I'm not aware of any offhand either. I do think it was dramatic. But what we get down to, Your Honor, is that this is a matter for Congress to address. Do you think Congress, well, in terms of things that it did address, what's the significance that it expressly prohibited rehabilitation as a prohibited ground and nothing else? I don't think it has any significance here at all. And here's why. First of all, it expressly prohibited something that might have reasonably, or it could have anticipated might be raised as an extraordinary condition. We see, or an extraordinary circumstance. We've seen cases where inmates have rehabilitated at an extraordinary level. So it anticipated something that would be within the bubble of extraordinary, but for the exclusion. And it also, this was enacted as part of the Sentencing Reform Act that was abandoning the parole system. And so rehabilitation obviously was a primary issue of concern and interest. And Congress determined that it should not be a sufficient reason, standing alone, the way it might have been with parole. It might have operated that way in the context of parole. So I don't think that it has anything to do with this. Flipping it on its side, it would have been unreasonable to think that Congress would anticipate a policy statement like the one you have before you that would purport to allow for the court on a compassionate release motion to release a person from Congress's intentional decision to not make a statute change retroactive. It would be difficult to imagine that that would be something that they could anticipate and expect that they would put it in as an exclusion. Congress gave us all these statutes, right? Including 3582. Do you think Congress could have written the statute to allow consideration of such non-retroactive changes as a factor? I think Congress could have. In deciding on compassion and release? Yes. Sure. It didn't. It didn't and it also didn't expressly prohibit it. Again, in 1984, which is the language that we have, I don't think it's reasonable. As you point out, the one that we're looking at, the changes to 924C are substantial. We're sympathetic to that and it's my understanding that there are bills pending in Congress that might make this change. But Congress hasn't passed them and this is a legislative decision. As I believe that you pointed out yourself, Judge Hamilton, or maybe it was Judge Gross, I'm sorry, that restrictions on the Sentencing Commission's rulemaking here or policy statement making here include the need for the policy statement to be consistent with the statute it's affecting as well as with the other federal statutes. This is clearly not. It also points out that it also gives the Sentencing Commission the right to petition or to recommend statutory changes to Congress, which I think amplifies the concept that they do not have the right to authorize a case-by-case exception to the categorical rule that Congress set in saying that Section 403 would be effective prospectively only. It may seem hard. It is hard. But this is something that is up to Congress. And the Commission's decision to incorporate it into a policy statement far exceeds the Commission's authority. And it should be held invalid. So the Department's views in the Commission were not honored. That would not be the basis for our argument, Judge. That's true. You're right that the DOJ raised these issues with the Commission. And as did three members of the Commission, as you're aware. But nevertheless, recently someone said four is more than three. And here's where we are. At least there's a quorum now. Are there any further questions that you'd like to put to me, Your Honors? I want to make sure that you see them.  Thank you. We would ask that you affirm the District Court's judgment in this case. Thank you so much. Thank you. Commissioner Tice. This last exchange brings me back to something that was developed in at least our brief, in which the government has not paid very much attention to, that in order for the court to invalidate this policy statement, it has to find that it's an irreconcilable conflict with the Fair Sentencing Act provision about 924C. The Morton v. Mankiewicz line of cases, the Supreme Court even said, we haven't been able to find any instance where we find that Congress implicitly overruled. And what happened in 924C's amendment is Congress said, we're going to give this limited form of relief to people who haven't been sentenced yet. They didn't say anything about the statute that they enacted in 1984. And the statute that was enacted in 1984 is fleshed out by the policy statement. It says, you know, courts, given the confines of our policy statement, and given your consideration of the facts and circumstances under 3553A, it's possible to reduce a sentence for somebody who has stacked sentences. Sometimes a judge will be willing to do that. Sometimes they won't. In this case, we don't know. We haven't gotten that far. I'd ask you to reverse so that we can get back to that stage and find out what should be the resolution for Mr. Blank. So we, last time around, we did remand for the exercise of discretion, correct? Correct. And that was never exercised? Well, what happened was that by the time it got back, Mr. Blank's cancer treatment had been completed and he seemed to be in remission. Okay. Thank you. Thank you. Thank you, Mr. Tice. Thank you to both counsel. The case will be taken under advisement and the court is in recess.